# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>v.<br><br>**EUCLIDES JAUREGUI (14)**<br>Defendant | Case No. 19-cr-544-TPB-TGW |

## SENTENCING MEMORANDUM

**COMES NOW** the defendant Euclides Jauregui, by and through the undersigned counsel, who hereby respectfully states, avers, and submits this memorandum in anticipation of his sentencing hearing. After considering the multitude and significance of the mitigating factors in this case, the Honorable Court should depart from the sentencing guideline recommendation and impose a 60-month term of incarceration. Mr. Jauregui has been incarcerated since November of 2019.

### I. PLEA AGREEMENT

The government and Mr. Jauregui entered into a plea agreement whereby Mr. Jauregui agreed to cooperate with the government. Docket No. 300. Pursuant to the plea agreement, Mr. Jauregui pled guilty to count one of the indictment, which is for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. *See* 46 U.S.C. § 70506(a) and (b) and 21 U.S.C. § 960(b)(1)(B)(ii). The plea agreement calls for the dismissal of the other remaining count in the indictment.

Despite Mr. Jauregui's status as a first-time offender, the statutory minimum terms of punishment are 10 years of incarceration and 5 years of supervised release. However, Mr. Jauregui's satisfactory cooperation releases him from these draconian mandatory minimums. *See* Docket No. 433; 18 U.S.C. § 3553(e) and (f).

The presentence investigation report calculates the total offense level at 35. Docket No. 437 at p. 9. However, the government subsequently filed a motion for an 8-level downward departure based upon Mr. Jauregui's substantial assistance. *Id.* Thus, if the Court were to grant this motion, that would leave Mr. Jauregui with a total offense level of 27, which would call for a recommended sentencing range from 70 to 87 months of incarceration. While this is a substantial reduction, we submit that the interests of justice warrant a downward departure.

## II. APPLICABLE LAW

The sentencing process in federal court has undergone significant changes since the adoption of the sentencing guidelines in 1987. Perhaps the most concise historical summary was penned by Judge Posner:

> Before there were guidelines, a federal judge in picking a sentence ranged essentially at will within the typically broad statutory sentencing limits, appellate review of the choice of sentence within those limits being minimal, even perfunctory. The guidelines [adopted in 1987] sought to narrow judicial discretion by creating sentencing ranges inside the statutory minimums and maximums and limiting departures from the applicable range. *Booker* [decided in 2005] unbound the sentencing judges from the guidelines; and while the judges are still required to consider them, they may not ignore substantial arguments for deviating, and can if they wish reject the penal theories that inform the guidelines and (within reason) devise and follow a different penal theory. [This new approach to sentencing is] coupled with the requirement that appellate review of sentences is now to be robust, albeit deferential, unlike the attitude of almost total deference that prevailed before the guidelines were promulgated . . .

Introduction, 3 Fed. Prac. & Proc. Crim. § 532 (4th ed.) (alterations in original) (citing *United States v. Aguilar-Huerta*, 576 F.3d 365, 366 (7th Cir. 2009), cert. denied, 130 S. Ct. 811, 175 L. Ed. 2d 569 (2009)); *see also United States v. Irey*, 612 F.3d 1160, 1180-1192 (11th Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1813, 179 L. Ed. 2d 772 (2011).

"The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892, 172 L. Ed. 2d 719 (2009) (italics in original); *United States v. Vidal-Reyes*, 562 F.3d 43, 49 (1st Cir. 2009) ("After Booker, the applicable guidelines range is treated merely as advisory and the sentencing court is free to exercise its discretion to impose a reasonable sentence outside the guidelines range that is 'sufficient, but not greater than necessary' based on the factors articulated in § 3553(a)." (citations omitted)); *see also United States v. Cavera*, 550 F.3d 180, 188-89 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District judges are, as a result, generally free to impose sentences outside the recommended range. When they do so, however, they must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. In this way, the district court reaches an informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing. (internal quotations and citations omitted)), cert. denied, 129 S. Ct. 2735, 174 L. Ed. 2d 247 (2009).

## III. MITIGATING FACTORS

Mr. Jauregui's case is rife with mitigating factors that would call for a downward departure from the sentencing guidelines. The mitigating factors are separated into six sections: (1) reasons for committing the offense, (2) first time offender, (3) substantial assistance, (4) incarceration during unprecedented pandemic, and (5) character letters. Mr. Jauregui has been incarcerated since November of 2019. As detailed below, such a sentence is "sufficient, but not greater than necessary" given unusual nature of Mr. Jauregui's situation. *See* 18 U.S.C. § 3553(a).

### A. Reasons for Committing the Offense

Mr. Jauregui is one of eleven siblings. Although his father, who was a fisherman, made enough money to provide food for everyone, there was not enough money for basic material needs like clothes. As a result, Mr. Jauregui stopped attending school in the sixth grade. The reason for this being that he started to work for his father so that he could financially assist the family. This is how Mr. Jauregui was forced to turn to fishing and later to crime to try and make ends meet. In Venezuela, like the Wild West, honest work was unfortunately not enough to support his family.

### B. First Time Offender

Prior to this case, Mr. Jauregui, who will soon be 55 years of age, has never been arrested, charged, or convicted of anything. In addition to all other factors mentioned in this sentencing memorandum, Mr. Jauregui deserves some lenience because of almost an entire lifetime's worth of crime-free living.

### C. Substantial Assistance

During these difficult criminal proceedings, Mr. Jauregui made the difficult choice to be the first one to come to the table and provide substantial assistance to the government. The government graciously accepted this assistance, which eventually resulted in the remaining codefendants pleading guilty thereafter. The government recognizes the importance of Mr. Jauregui's cooperation by filing, as previously alluded to, a motion for an 8-level downward departure. Docket No. 433; 18 U.S.C. § 3553(e) and (f). Mr. Jauregui was entirely truthful in his dealings with the government and offered up many useful clarifications and volunteered other information, despite the implications that it may cause for others in the future. Mr. Jauregui's cooperation included details of the *modus operandi* of drug trafficking in the region of the Cartel de los Soles in Venezuela; details of fishermen's boats used to receive contraband and transfer it to speedboats; details of the captains involved in these trips; details of key words/codes utilized in transactions; details of quantities of kilos involved in the smuggling (shipments that were never occupied); and last, but not least, details of the payroll and individuals on the payroll, including himself.

It should be noted that his choice to do the right thing and cooperate may still result in harsh consequences to him and his family once he returns to Venezuela. The Court should understand the significance of this reality and sentence Mr. Jauregui to a sentence under the guideline range.

### D. Incarceration During an Unprecedented Pandemic

As this Court is already aware of, 2020 was an unprecedented time in modern times because of the worldwide proliferation of COVID-19. According to the World Health Organization, as of today, COVID-19 is responsible for almost 4.5 million deaths

worldwide.[1]  While the situation has substantially improved, civilization as we knew it was literally on the verge of collapse.

While this was a difficult time for the average person, imagine what it must be like for a first-time offender incarcerated in a foreign country, where one does not know the language or fully understand the legal system, without any bond and no trial date in sight while your family lives in a vulnerable third-world country, incapable of effectively handling a crisis of this proportion.  At any point, Mr. Jauregui himself, who is 54 years of age and suffers from hypertension, could contract COVID-19 and possibly die.  Mr. Jauregui was forced to constantly consider the possibility that he may never see his family again.

Additionally, visitation—even legal visits—became impossible for some time, making it difficult for the undersigned to answer his questions, provide information about his family's wellbeing, and guide him through the proceedings.

Not all jail time is created equal.  Mr. Jauregui was required to live through a difficult situation that the millions of detainees that predate him in our legal history did not.  Mr. Jauregui's unfortunate timing caused him to suffer exponentially more punishment than others before him who have committed this crime.  The Court should respectfully consider this reality when imposing a prison sentence.

---

[1] https://covid19.who.int/.

### E. Character Letters

Finally, before resting, we enclose several letters written by Mr. Jauregui's peers asking the Court for lenience and highlighting Mr. Jauregui's admirable qualities. Although they are all translated and attached as exhibits, it is perhaps useful to emphasize certain portions of them.

First, Mr. Jauregui's mother, Irama De Jauregui, had this to say about her son:

> My suffering is in the hands of Jesus Christ because only he knows the heart of all human beings. With the respect you deserve, your honor, I felt a deep sadness in my heart when I heard that my son is deprived of his freedom in a country he does not know, far from his family and friends, who love him and know what a good person he is *(See Exhibit 1)*.

On the other hand, Mr. Jauregui's friend of 10 years, John M. Pares, said the following:

> Euclides Jauregui is the sole economic provider for his family (wife, children, mother, and father). His mother has become very ill since her son Euclides has been deprived of his freedom in another country, and his wife and younger children do not have an economic income and stable work due to the situation that is lived worldwide of the COVID-19 pandemic *(See Exhibit 2)*.

Moreover, Merlina A. Pares, Jose F. Vazquez, Yramis Jauregui, Edgar Jauregui and Mely J. Romero, who are immediate family or close friends, also had very similar things to say about Mr. Jauregui's character and life situation. *See Exhibits 3, 4, 5, 6 & 7.* Likewise, Ramón Jauregui, brother of Mr. Jauregui described him in the following manner:

> . . . I would like to mention that even though he committed a crime, he is an honest, hardworking person with good values, always helping his parents, family and friends. Life circumstances pushed him into the wrong territory in search of better economic conditions for his family.
>
> My brother, Euclides Jauregui, has always helped his family economically. My mother has become very ill since my brother has been deprived of his freedom in another country. An uncle recently passed away and it was very sad because until the end of his days he never stopped praying to God for the freedom of his nephew so that he could be back home with his family *(See Exhibit 8)*.

Perhaps the most powerful letter was submitted by Emelys J. Jauregui V., Mr. Jauregui's daughter, which reads as follows:

> …Please Mr. Judge, my father is an honest person, principled, judicious, good person, as a husband, son, friend, and above all, a wonderful father.
>
> I have a little sister and every day I show her a picture of my dad. I talk to her about him, and we pray together so that she will grow up and keep the few memories she has lived with him, Mr. Judge, it is not fair that my little sister grows up and does not have any clear memory of love and affection from her father. It is only fair that he sees her grow up and share with her the best possible moments of her life, just as mine were, although I still wish with all my soul to continue sharing moments with my dad who has been for me, my great love, the man of my heart, my hero… *(See Exhibit 9).*

Finally, Mr. Jauregui's wife, Rosmely Vazquez, redacted a heartfelt prayer to God, imploring for her husbands' justice, liberty, and protection. *See Exhibit 10.* In addition, she provided us with their marriage certificate, among other personal documents. *See Exhibit 12*. The common trend in these heartfelt letters is Mr. Jauregui's love for his family, work ethic, and his desire to do whatever it takes to help those he loves. These letters support all the previously described mitigating factors and call for a downward departure.

## IV. CONCLUSION

For all the foregoing reasons, Mr. Jauregui should be sentenced to the lowest sentence allowable under the law. Although Mr. Jauregui's sentencing guideline offense level (after granting the government's downward departure motion) would call for him to be sentenced in the 70-to-87-month range, we respectfully submit that this would still be more than what is required by the interests of justice.

The case law is clear that the Court may depart from the sentencing guidelines and the Court should exercise that discretion in this case. All the mitigating factors described

above, both individually and collectively, call for a downward departure. Mr. Jauregui has already been incarcerated since November of 2019. Although breaking the law is wrong, he did so for a commendable reason: because of his family's financial situation in Venezuela. In addition, Mr. Jauregui has never been in trouble with the law and was the first defendant to cooperate with the government in this case. Moreover, his incarceration during an unprecedented pandemic in another country with no trial in sight without knowing if he will ever see his family again carries additional unintended punishment that those convicted of this same crime never had to deal with. Further, Mr. Jauregui is remorseful and has found God, which makes it unlikely that he will ever reoffend. Finally, the character letters provide further support all these asseverations.

Accordingly, this Honorable Court should sentence Mr. Jauregui to 60 months of incarceration. This amount of incarceration is in accordance with the interests of justice after considering this strong combination of mitigating factors.

**WHEREFORE**, Mr. Jauregui respectfully requests that the Honorable Court sentence him to the lowest sentence permissible by law, which would be a time-served term of incarceration. Such a sentence would be "sufficient, but not greater than necessary" in light of the totality of circumstances. *See* 18 U.S.C. § 3553(a).

**I HEREBY CERTIFY** that, in accordance with Federal Rule of Criminal Procedure 49, a true and correct copy of the foregoing has been furnished via CM/ECF to all parties or their attorneys by way of their designated email addresses, this 17 day of September, 2021.

*s/ EDWIN PRADO-GALARZA, ESQ.*

Attorney at Law
513 W. Colonial Dr, Unit 5
Orlando, FL 32804
Florida Bar No. 1008115
T. (787) 977 – 1411
F. (787) 977 – 1410
[Pradolaw10@gmail.com](mailto:Pradolaw10@gmail.com)